**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**CASE NO.** 8:11-cv-01772-AW

PATRICK COLLINS, INC.

      Plaintiff,

v.

JOHN DOES 1-22,

      Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DOE # 20's MOTION TO**
**DISMISS AND MOTION TO SEVER AND QUASH**

## I.    INTRODUCTION

"[T]he overwhelming majority of courts have denied as premature motions to sever prior to discovery" of the identities of the Doe Defendants being obtained by Plaintiff in BitTorrent cases. First Time Videos, LLC v. Does 1-76, --- F.R.D. ----, 2011 WL 3586245 (N.D. IL 2011) (citing a long list of cases). Joinder in BitTorrent copyright infringement cases has been thoroughly analyzed in over thirty reported opinions and has been universally permitted where, as here: (a) the complaint clearly explains how BitTorrent works through a series of transactions, (b) all of the defendants live in the district (eliminating long-arm issues and venue), (c) all of the defendants were part of the same exact swarm of peer infringers as evidenced by a unique cryptographic hash value, and (d) Plaintiff pled that the Defendants' are contributorily liable for each others' infringement. Since Joinder is permissive, even when proper, Plaintiff devotes the first half of this memorandum to explaining the facts supporting why joinder should be permitted. The second half of the memorandum explains why joinder is clearly proper under the decisional authority of every district court which has addressed the issue in the country.

1

## II.        FACTS

### A.      Plaintiff Has A Serious Problem With On-Line Infringment

Plaintiff works hard on its movies which contain a significant amount of creativity.    From reports received by Plaintiff's investigator, IPP Limited, undersigned knows that Plaintiff's movies are being illegally downloaded through the BitTorrent peer-to-peer file sharing protocol by people residing in the U.S. well over 100,000 times a month.  Indeed, the adult entertainment industry has been particularly hard hit by the online infringement of its copyrights.  According to a Miami New Times survey, thirty two percent (32%) of respondents admit to illegally downloading their adult movies.[1]  Faced with this massive amount of infringement, Plaintiff is justifiably concerned that unless it fights on-line piracy, people will come to learn that they can infringe Plaintiff's copyrights with impunity.  If that happens, Plaintiff's business may fail: to use BitTorrent jargon, while one bee sting hurts, a "swarm" of bees can kill you.[2]

### B.       The Executive Branch, Congress, Federal Courts And Copyright Owners Are All Very Concerned With The Jobs And Money Lost From Online Piracy

On June 22, 2010, Vice President Biden, speaking for the Executive Branch, said of on-line piracy "[t]his is theft, clear and simple."[3]  "It's smash and grab, no different than a guy walking down Fifth Avenue and smashing the window at Tiffany's and reaching in and grabbing what's in the window." Id.  "[O]n February 16, 2011, the Senate Judiciary Committee, led by Chairman Patrick Leahy (D-Vt.), held a hearing . . . about the growing problem of online infringement. . . ."[4]  Leahy said "[t]he problem of online infringement is real; it is substantial; and it is a drain on our economy, which costs American jobs."  Id.  He continued "[c]opyright piracy and the sale of counterfeit goods are reported to cost the American economy billions of dollars annually and hundreds of thousands of lost jobs."   Id.     Regarding jobs, in Suntrust Bank v.

---

[1] See http://business.avn.com/articles/video/Miami-New-Times-Releases-Sex-Survey-Results-447237.html
[2] Peers sharing data using BitTorrent are referred to as a "swarm."
[3] See  http://www.reuters.com/article/2010/06/22/us-usa-trade-web-idUSTRE65L3YN20100622
[4] See http://www.techzone360.com/news/2011/02/16/5318701.htm.

Houghton, 268 F.3d 1257, 1260-63 (11th Cir. 2001), the Eleventh Circuit explaining the history and purposes of the Copyright Act stated that "[t]his limited grant [a copyright] 'is intended to motivate the creative activity of authors ... by the provision of a special reward." Right now – the public policy underlying copyright law is at risk insofar as the anticipated infringement of Plaintiff's works is discouraging it and other movie studios from investing in new works. This not only costs jobs, it deprives people of the ability to watch movies they would otherwise enjoy.

"It is especially critical that the United States has an effective framework for protecting creative content online and enforcing intellectual property rights in the digital environment" said Bob Pisano, interim chief executive officer at the Motion Picture Association of America.[5] As explained below, short of a declaration of war against innumerable countries offering sanctuary to professional digital pirates, without joinder in on-line copyright cases, our country does not have an effective tool for combating the enormous amount of on-line piracy committed here.

### C.    The Internet Creates A Unique Moral Hazard For File Sharers

By now, U.S. citizens know or should know that file sharing is illegal. Online piracy started to seep into the public consciousness a decade ago when Napster, a prominent peer-to-peer internet system for sharing music, *with much publicity*, was held liable for contributory infringement and vicarious copyright infringement. See A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (2001). To avoid a claim for contributory infringement, in 2001, contemporaneously with Napster's demise, Grokster, a company that studied the Napster decision, introduced software and a system intentionally designed so that Grokster could not tell what was being shared among and between its users. Groskter promoted itself as Napster's replacement; its efforts led to MGM Studios, Inc. v. Grokster, Ltd. 545 U.S. 913 (2005) wherein the United States Supreme Court unanimously held that Grokster could be sued for "inducing" copyright infringement for

---

[5] See  http://www.reuters.com/article/2010/06/22/us-usa-trade-web-idUSTRE65L3YN20100622

marketing file sharing software.  See also, Arista Records LLC v. Lime Group LLC, 715 F. Supp. 2d 481 (2010) (enjoining Grokster's replacement, Lime Wire.)  Again, *with much publicity,* on September 8, 2003, during the Groskter case, the Recording Industry Association of America (RIAA) launched a campaign through which, over several years, it enforced the recording industry's copyrights against 18,000 individual file sharers.

Despite all these efforts, and the thousands-and-thousands of news stories and articles explaining that on-line infringement is illegal, the allure of free songs and movies continues, and people, like the Doe Defendants here, persist to illegally download songs and movies on a massive scale.  People do so not because they do not know it is wrong but rather because people do not think they will get caught.   In short, the moral hazard associated with the anonymous ability to steal with impunity over the internet has proven too high a temptation for unscrupulous file sharers.   Copyright owners must be permitted to police the internet and, to have any deterrence effect, joinder in peer-to-peer copyright cases is absolutely necessarily.[6]

### D.      Professional Digital Pirates Thumb Their Noses At Copyright Owners

The technology used to commit the instant infringement is called BitTorrent.  BitTorrent is merely a set of computer rules.  To enable it, one has to download software onto their computer, called a BitTorrent Client.  Since BitTorrent has legitimate non-infringing uses, unless a particular BitTorrent Client expressly advertises itself as a means to accomplish copyright infringement, like Grokster, then a case against said BitTorrent Client would be tough.   Moreover, there are

---

[6] When a person runs a red light, law enforcement sends a picture of the license plate along with a ticket to the car's owner.  This is proper because the registered owner is by far the most likely driver.  Nevertheless, just like a car's owner may defend by asserting that he was not the driver, so too may an IP Address owner defend by asserting that he was not the file sharer but merely the subscriber.  At a minimum, however, a licensed owner who lends its car or internet to a third party must assist to identify the borrower that misused its property.  Any argument to the contrary is devoid of equity.  Moreover, Plaintiff could amend its complaint to plead negligence against any particular John Doe Defendant who asserts he or she was not the infringer but merely the subscriber.  See Liberty Media Holdings, LLC v. Swarm of November 16, 2010, 2011 WL 1597495, *4 (S.D.Cal.2011) (In a joined BitTorrent suit holding "Plaintiff's negligence cause of action could withstand a motion to dismiss.")

countless BitTorrent Clients, they are available for download for free, and many of these companies are located outside the reach of the U.S.'s courts.

A suit against the digital thieves running torrent websites, where infringers go to download and distribute songs and movies, would certainly succeed; these sites explicitly promote infringement because it is their whole business.[7]   Unfortunately, litigating against torrent sites is virtually impossible because torrent sites intentionally situate themselves overseas in jurisdictions that do not enforce U.S. copyright laws.   For example, one of the most popular torrent sites, obnoxiously thumbs its nose at U.S. copyright owners by posting its responses to demand letters on its website.   See its response to Dreamworks, Inc.'s demand letter stating: "Sweden is a country in northern Europe . . . no Swedish law is being violated . . . you are morons, and you should please go sodomize yourself with retractable batons."[8]   The self proclaimed "Biggest Torrent System", Extratorrent.com, which illegally distributes Plaintiff's movies, not only hides itself in Somalia but is changing the top level of its domain from .com to .ws in anticipation of a U.S. Bill entitled Combating Online Infringement and Counterfeits Act ("COICA") becoming law.[9]   COICA would give the U.S. Department of Justice the power to take down .com sites because the .com registrar resides in the U.S.

**E.      Plaintiff's Copyright Enforcement Campaign is Necessary and Proper**

Faced with a very serious problem of infringement and no easy solution for solving it, Plaintiff made the difficult choice to enter into a complicated, extraordinarily labor intensive and expensive copyright enforcement campaign against individual file sharers.   The first step in this process is learning the identity of the subscribers whose IP addresses were used to commit an infringement.   As explained below, courts should and are overwhelmingly supporting these efforts

---

[7] See Disney Enterprises, Inc. v. Delane, 446 F.Supp.2d 402 (D. MD. 2006) (torrent website lost suit)
[8] See http://static.thepiratebay.org/dreamworks_response.txt
[9] See http://extratorrent.com/ the red lettering on the home page which states please pay attention "[w]e are in the process of migrating the site to our new domain extratorrent.ws."

by ruling against motions to quash.  By doing so, courts are contributing to the resolution of the problem of "[c]opyright piracy . . . reported to cost the American economy billions of dollars annually and hundreds of thousands of lost jobs."  <u>See</u> Senator Leahy's press release, cited above.

**F.     Peer-To-Peer Copyright Suits Have Several Unique Characteristics That <u>Weigh Heavily In Favor Of Finding That Joinder Is Proper Prior to Discovery</u>**

**i.     Plaintiff Proceeds Against Unknown John Doe Defendants That It May <u>Not Want to Sue</u>**

In a traditional lawsuit, Plaintiff has the luxury of investigating the potential defendant before filing suit.  As any experienced litigator will attest, the process of investigating a defendant and discussing the matter with said defendant prior to a full blown litigation routinely weeds out suits.  Here, since Plaintiff is proceeding against anonymous John Does, Plaintiff does not have that luxury.  Accordingly, at the inception of a suit, through no fault of Plaintiff, Plaintiff is not truly sure that it wants to proceed against any particular John Doe.  For example, through similar copyright infringement suits filed by Plaintiff's lawyers across the country, a police department running a covert investigation was identified as a John Doe defendant.  Plaintiff voluntarily dismissed that John Doe.  Many John Doe defendants are destitute and therefore not worth suing.  Several of the John Doe defendants have died prior to being identified.  Several John Does have been public or political figures who Plaintiff did not to choose to sue.

**ii.     Absent Joinder, Data Retention Issues Will Cause Plaintiff To Sue <u>John Does That Cannot Be Identified</u>**

Just like the FBI, Plaintiff has learned through suits across the country that there are major deficiencies associated with many internet service providers' ability to correlate a subscriber to an individual.[10]  According to the FBI, 19% of its ISP lookup requests in one child pornography

---

[10] <u>See Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives</u>, (January 2011) at http://judiciary.house.gov/hearings/pdf/Weinstein 01252011.pdf, stating: In some ways, the problem of investigations being stymied by a lack of data

investigation failed to yield a positive identity.  See FN 10.  Plaintiff's statistics are similar, 10-15% of the identities subpoenaed by Plaintiff in cases nationally fail to identify a person or legally entity.   While most national ISP are fairly good at retaining data, several other national ISPs and many regional ISPs are very bad at it.  Any decision regarding joinder in a BitTorrent peer-to-peer copyright case simply must take data retention and data failure issues into consideration. Significantly, a rule requiring Plaintiff to sue John Doe defendants on an individual basis creates the substantial risk that the target will not be identified.   Unless the Court system allows Plaintiff to dilute the problem through joined cases, this phenomenon will needlessly increase the cost associated with pursuing infringement cases.   Moreover, since costs are recoverable under 17 U.S.C. § 505, one of the core purposes of the Copyright Act would be undermined in cases where the discovery failed to identify a person.

> ### iii. Absent Joinder, The Dynamic IP Address Issue Will Cause Plaintiff to Sue The Same Defendants Twice

Internet Protocol addresses are frequently "dynamic" which means that the address used by any particular computer changes from time-to-time.  Despite Plaintiff's best efforts to scrub the data to reduce the possibility of suing the same person twice, on innumerable occasions, Plaintiff has sued the same person twice for downloading the same torrent file.  In these situations, it is unclear if Plaintiff could recover its fees and costs for both suits from that defendant.  Regardless

---

retention is growing worse. One mid-size cell phone company does not retain any records, and others are moving in that direction. A cable Internet provider does not keep track of the Internet protocol addresses it assigns to customers, at all. Another keeps them for only seven days * * * In one ongoing case being investigated by the Criminal Division's Child Exploitation and Obscenity Section working with the Federal Bureau of Investigation and Immigration and Customs Enforcement, we are seeking to identify members of online groups using social networking sites to upload and trade images of the sexual abuse of children. * * * Investigators sent legal process to Internet service providers seeking to identify the distributors based on IP addresses that were six months old or less. Of the 172 requests, they received 33 separate responses noting that the requested information was no longer retained by the company because it was out of their data retention period. In other words, 19 percent of these requests resulted in no information about these offenders being provided due to lack of data retention. Indeed, lack of data retention has to date prevented us from identifying the investigation's chief U.S. target.

of to whom these fees and costs are attributed, either Plaintiff or a Doe defendant will be adversely affected by a rule requiring individual suits prior to discovery of identities.

### iv.   Public Policy Encourages Early Settlements And Plaintiff's Demands Are Consistent With Decisional Authority

Upon information and belief, Capitol v. Thomas, 06-cv-01497, (D.C. MN) was the first file-sharing copyright infringement lawsuit in the United States brought by a major record label to be tried before a jury.  Ms. Thomas was found liable for infringement.  The damages awarded by the jury and judge over three rounds of jury trials and intermittent judicial reductions ranged between $65,000 and $2250 per song downloaded.  Joel Tenenbaum, in Sony v. Tenenbaum, 03CV11661-NG, (D. Mass), was also adjudged liable for infringement, and the jury verdict was for $22,500 per song, which was later reduced by the judge to $2250 per song on the basis that it was an unconstitutional denial of Due Process to award more.  Sony appealed to the First Circuit arguing the judge did not have discretion to reduce the reward since the Copyright Act expressly states statutory damages may be awarded in an amount up to $150,000 per infringement.  The appeal has yet to be ruled upon.

At the early stages of an action, the settlement demands that Plaintiff makes of the Doe Defendants is consistent with the low end of the amounts awarded in the Capitol and Sony cases plus the legal fees and costs associated therewith.  "The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy."  West v Liberty Mutual Ins. Co., 1994 WL 399140 at *2 (4th Cir. 1994).  Here, Plaintiff's attempts to quickly settle are favored by public policy.

Increasing the costs associated with this litigation by forcing Plaintiffs to file individual suits would only increase the settlement demands, make settlements less probable, and may ultimately prove the death knell to Plaintiff's ability to enforce its copyrights.  This phenomenon

is exactly what the digital pirates and free internet zealots expressly want.   In English and American jurisprudence, there is an old legal maxim: <u>for every right, there is a remedy; where there is no remedy, there is no right</u>.[11]   Given the potential limitation imposed on the amount of recoveries in these suits ala Tennenbaum, the problems with data retention and dynamic IP addresses, and the extraordinarily labor intensive nature of these suits, without joinder Plaintiff will have a copyright but no cost effective remedy to enforce it.

<b>v.      Joinder is Required By Rule 1's Instruction to Judges to Construe The <u>Rules to Secure the Inexpensive Determination of Every Action</u></b>

Fed.R.Civ.P. 1 requires that Courts construe the rules to secure the inexpensive determination of every action.   Fed.R.Civ.P. 20, the joinder rule, has the same purpose.   As explained below, disallowing joinder is inconsistent with the purpose of both Rules.   Indeed, 30-55% of the individuals typically sued in a joined suit settle very early in the litigation process. Another significant percentage of the remaining Doe Defendants are likely to default.   Plaintiff will choose not to sue certain other Doe Defendants.   Consistent with all of the foregoing, Plaintiff does intend to and will proceed against many of the remaining infringers through trial if necessary.   During the RIAA's campaign against 18,000 file sharers, it only had to take about fifty (50) of these matters to trial.   The low probability that a trial will actually be necessary in any given joined suit should weigh heavily in favor of supporting joinder; particularly, at the early stages of a suit.

It would take Plaintiff an enormous amount of time to create the papers necessary to initiate, track and manage individual suits against all the Doe Defendants in this case.   Further, the filing fees to initiate these suits would be thousands-and-thousands of dollars instead of $350. Since jurisdiction and venue is proper in this District, all of these cases would be filed in this District.   Plaintiff would have to file notices of related cases.   Presumably, this Court would

---

[11] http://en.wikipedia.org/wiki/Judicial_remedy

consolidate the cases for purposes of judicial management.   Nevertheless, at every stage of the process, the litigants and the Court would be faced with additional work.   For example, instead of one motion for leave to serve subpoenas in advance of a 26(f) conference, there would be many such identical motions.   Instead of one Rule 26(f) conference and report, there would be many such identical Rule 26(f) conferences and reports.   Identical pleadings and papers would be repetitively filed all of the way to the end of the cases.   Not only would this needlessly increase the costs for the parties and Court but also for the third party internet service providers.

### vi.   File Sharers Dream of "Crippling the Process" Through Templated Motions to Quash

Plaintiff has received hundreds of cut and paste motions to sever or quash or both in similar litigations across the country.   According to Graham Seifert, one of the primary authors of several versions of the template motions, "[m]y dream would be to have 10,000-20,000 people file all three documents to the lawyers and severely cripple the entire process."[12]   A simple internet search of the words "defending lawsuits BitTorrent Motion" reveals that there is cottage industry promoting these types of motions.   These cut and paste motions have also been put on torrent websites containing instructions on how to complete them and are being downloaded by the Doe Defendants and their counsel in these matters.[13]   In Maverick Entertainment Group, Inc. v. Doe 2011 WL 1807428 (D.D.C. 2011) the Court noted that it was "ironic" that in a copyright infringement suit "'at least two' putative defendants have 'substantially copied' and filed briefs.")

### vii.   Plaintiff Knows Motions To Sever Are Disingenuous And Sometimes Gives Defendants That for Which They Ask But Do Not Really Want

Plaintiff knows these motions are disingenuous.   Its attorneys across the country have had scores of conversations with different lawyers all over the country who call threatening to file these motions disingenuously asserting prejudice to defendants being identified in a joined case.

---

[12]See http://lawvibe.com/uscg-sues-bittorrent-users-graham-syfert-of-affinity-law-firm-defends/
[13] See http://www.kat.ph/search/law%20firm/.

Almost without fail if Plaintiff states that it will voluntarily sever the defense counsel's client and sue the person individually the defense counsel backs down and admits that his or client being sued individually is not in his or her client's best interests.

As part of a strategy aimed at reducing the number of severance motions, Plaintiff has frequently and will continue to voluntarily dismiss some movants that seek to sever and sue these movants individually.[14]   Plaintiff's strategy of giving Doe Defendants what they ask for but clearly do not want has been working with counsel and Plaintiff hopes it will become known to pro se Doe Defendants over the long term.[15]

### viii.   Courts Hold that Suing The Doe Defendants Individually Is NOT in the Doe Defendants' Best Interests

"According to the Fourth Circuit Court of Appeals . . . attorneys' fees are routinely awarded in copyright infringement cases." M.L.E. Music v. Kimble, Inc., 109 F. Supp.2d 469, 474 (S.D. W.Va. 2000), citing Allen v. Burke, 690 F. 2d 376 (4th Cir. 1982).  "Many district courts within this circuit have routinely awarded attorneys' fees and costs where bad faith was found against a Defendant." Id.  (citing five (5) cases).  Here, Plaintiff alleges that each of the Defendant's acts of infringement was willful.  Indeed, Plaintiff intends to show the jury the torrent website from which Defendants downloaded Plaintiff's movie, which contains movies currently out in theaters and songs no rational person would think are available for free.  For this reason, Courts hold that "joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants." Call of the Wild Movie, LLC., 770 F.Supp.2d 332, 344 (D.D.C. 2011).

---

[14] Plaintiff and undersigned counsel *sincerely* apologize to the Court for not explaining its strategy through a notice that could have been filed in advance of this Court's order severing the Defendants.
[15] See Plaintiff's declaration filed in support, this strategy has been working.

## III.   ARGUMENT

## A.   LEGAL STANDARD

Fed. R. Civ. P. 20(a)(2) states:

Persons . . . may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

"Under the Federal Rules generally, 'the impulse is toward the broadest possible scope of action consistent with fairness to the parties and joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966).   "The purpose of [Rule 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits."   Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1332 (8th Cir.1974).  Here, severing Defendants will create multiple totally unnecessary lawsuits.

a.   The Logical Relationship Test

Courts across the country employ the "logical relationship" test to ascertain whether joinder is proper under the same transaction or series of transactions test.  According to the rule, a series of transactions may be a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship, and absolute identity of all events is unnecessary:

[As for Rule 20], construction of the terms 'transaction or occurrence' as used in the context of Rule 13(a) counterclaims offers some guide to the application of this test. For the purposes of the latter rule, 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. Moore v. New York Cotton Exchange, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926). Accordingly, all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. 7 C. Wright, Federal Practice and Procedure § 1653 at 270 (1972). The analogous

interpretation of the terms as used in <u>Rule 20</u> would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. <u>Absolute identity of all events is unnecessary.</u>  [Underlining added.]

<u>Mosely v. General Motors Corp., 497 F.2d 1330</u> (8th Cir. 1974).   "Many courts have determined that all "logically related" events "generally are regarded as comprising a transaction or occurrence [or series of transactions]."  <u>Stinnette v. Medtronic, Inc.</u>, 2010 WL 767558 (S.D. TX 2010).[16]   The logical relationship test has been consistently used in decisions concerning BitTorrent copyright infringement in suits across the country.  <u>See e.g.</u> <u>Patrick Collins, Inc. v. John Does 1-2590,</u> 2011WL 4407172, * 6 (N.D. Cal. 2011) (employing the "logically related" test and noting that it is "flexible," and holding that joinder is proper in a BitTorrent copyright infringement case.)

## B.   **The Way Bittorrent Works, Infringers Continue To Distribute Files Indefinitely**

BitTorrent continues to distribute data for a particular torrent file until the user commands its BitTorrent Client (software program) to stop distributing it.   Many users never instruct the program to stop distributing data.   According to BitTorrent's own website:

**Seeding** is where you leave your BitTorrent client open after you've finished your download to help distribute it (you distribute the file *while* downloading, but it's even more helpful if you continue to distribute the full file even after you have finished downloading). Chances are that most of the data you got was from seeds, so help give back to the community! It doesn't require much - <u>BitTorrent will continue seeding until the torrent is removed</u>. [Underlining added.]

See http://www.bittorrent.com/help/guides/beginners-guide.

---

[16] A Westlaw search performed by Plaintiff's counsel revealed that the vast majority of districts across the country have adopted this test and that it has become the *de facto* test.

**C.    Same Swarm BitTorrent Infringement is Logically Related**

The    following    description    of    BitTorrent    can    be    found    at http://computer.howstuffworks.com/bittorrent2.htm, and describes the series of transactions:



**WHAT BITTORENT DOES**

Unlike some other peer-to-peer downloading methods, BitTorrent is a protocol that offloads some of the file tracking work to a central server (called a tracker). Another difference is that it uses a principal called tit-for-tat. This means that in order to receive files, you have to give them. This solves the problem of leeching – one of the developer Bram Cohen's primary goals. With BitTorrent the more files you share with others, the faster your downloads are. Finally, to make better use of available Internet bandwidth (the pipeline for data transmission), BitTorent downloads different pieces of the file you want simultaneously.

BitTorrent  is  unique  insofar as it distributes the burden of sharing files to <u>all</u> users:



What makes the BitTorrent protocol unique is that it distributes [the burden of] the sharing of files to **<u>all</u>** users who have downloaded or are *in the process* of downloading a file. Because BitTorrent breaks up and distributes files in hundreds of small chunks, you don't even need to have downloaded the whole file before you start sharing. As soon as you have even a piece of the file, you can start sharing that piece with other users. That's what makes BitTorrent so fast; your BitTorrent client starts sharing as soon as it downloads one chunk of the file (instead of waiting until the entire download has been completed). [Parenthetical added, emphasis added.]

See://lifehacker.com/285489/a-beginners-guide-to-bittorrent.   By causing <u>all</u> users to distribute the file, BitTorrent ensures that all peers in a swarm materially aid every other peer.   This critical fact makes BitTorrent different than every other peer-to-peer network and is one of the reasons BitTorrent cases are distinguishable from previous peer-to-peer copyright cases.

### D. Doe Defendants Distributed The Same Exact Torrent File As Evidenced By A Cryptographic Alphanumeric Hash Value

As alleged in the Complaint, Plaintiff's movie was processed by a BitTorrent Client (a BitTorrent software program) which generated a torrent file.  The BitTorrent Client divided the movie into hundreds or thousands of digital parts called "pieces."[17]  "Each piece is protected by a cryptographic hash contained in the torrent descriptor."  Id.  The Hash system was created by the National Security Agency.[18]  It is used not only by BitTorrent but by this Court when it sends CM/ECF filings to litigants (the alphanumeric code at the end of the filing receipt is a cryptographic hash.)  "Cryptographic hash functions have many information security applications, notably in digital signatures, message authentication codes (MACs), and other forms of authentication."  See FN 18.  In BitTorrent, "[w]hen another peer later receives a particular piece, the hash of the piece is compared to the recorded hash to test that the piece is error-free."  See FN 19. "Cryptographic hash values are sometimes called (digital) fingerprints."  See FN 18.

Here, Plaintiff's investigators use the hash value as a digital fingerprint that enables Plaintiff to ensure that all of the infringements alleged in this suit arise from the exact same unique version of Plaintiff's movie as evidenced by the cryptographic hash value.  Significantly, many of Plaintiff's movies have been initially seeded several times.  Each seeding produces its own independent swarm.  Here, Plaintiff has only sued Defendants in the exact same swarm.

## IV.  LEGAL ARGUMENT

While "the overwhelming majority of courts have denied as premature motions to sever prior to discovery" of the Doe Defendants being obtained in BitTorrent cases, the cases which were severed have materially distinguishable facts.  There are over thirty (30) cases discussing BitTorrent and joinder.   None of the issues which have ever been held to make joinder improper

---

[17] See http://en.wikipedia.org/wiki/BitTorrent_(protocol)
[18] See http://en.wikipedia.org/wiki/Cryptographic_hash

are present in the subject suit.  An analysis of this body of law reveals that Courts are concerned with whether: (a) long-arm and venue are proper; (b) more than one of unique hash value was included in one lawsuit; and (c) the complaint specifically alleges how BitTorrent works.  Some courts have also criticized the sheer number of Doe Defendants in suits which contain 1000s of Doe Defendants.  For that reason, Plaintiff has deliberately kept the number of Doe Defendants in this suit to a comparatively small and manageable number.

A. **The District of Columbia Correctly Supports Joinder In BitTorrent Cases**

The District of Columbia has issued by far and away the longest, most comprehensive, decisions concerning the issues, including joinder, raised in BitTorrent litigation.  From most recent to oldest, the seven cases D.C. judges have adjudicated, which can be found on Westlaw, are as follows: (1) NuImage, Inc. v. Does 1-22,322, 2011 WL 3240562 (D.D.C. 2011) (10 page opinion, permitting joinder but ordering Plaintiff to show cause why the court has long arm jurisdiction, opining a subset of Does within the District would be proper); West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9 (D.D.C. 2011) (11 page opinion, permitting joinder, holding long arm could be used, denying all motions to quash); Call of the Wild v. Does 1-331, 274 F.R.D. 334 (D.D.C. 2011) (permitting joinder, holding long arm could be used, denying all motions to quash); Maverick Entertainment Group, Inc. v. Does 1-2115, 2011 WL 1807428 (D.D.C. 2011) (18 page opinion, permitting joinder, holding long arm could be used, denying all motions to quash); Voltage Pictures, LLC v. Does 1-5000, 79 Fed.R.Serv.3d 891 (D.D.C. 2011) (18 page opinion permitting joinder, holding long arm could be used, denying all motions to quash); Donkeyball Movie, LLC v. Does 1-171 (D.D.C. 2011) (15 page opinion permitting joinder, holding long arm could be used, denying all motions to quash); Call of the Wild v. Does 1-1062, 770 F.Supp.2d 332 (D.D.C. 2011) (36 page opinion addressing all of the issues raised in pre-Doe identification BitTorrent litigation.)  Significantly, the Call of the Wild

Court denied all of the motions to quash, ruled in favor of copyright owners on the joinder issue, the free speech issue, the right to remain anonymous issue [Doe's who file motions do not have that right], allowed Plaintiff to use the long arm statute, and held that internet service providers cannot refuse to comply with subpoenas on the basis that it is unduly burdensome.

**B.      Joinder is Proper Because the Defendants' Infringement Was Part of a Series of Transactions**

In <u>Call of the Wild,</u> the Court held the claims are a series of transactions or occurrences within the meaning of Rule 20(a)(1) because they are logically related:

> [T]he plaintiffs allege that the BitTorrent file-sharing protocol "makes every downloader also an uploader of the illegally transferred file(s). This means that every "node" or peer user who has a copy of the infringing copyrighted material on a torrent network must necessarily also be a source of download for that infringing file." Amended Compl., *Wild*, ¶ 3, ECF No. 6. The plaintiffs further assert that the "nature of a BitTorrent protocol [is that] any seed peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a source for the subsequent peer so long as that first seed peer is online at the time the subsequent peer downloads a file." *Id.* at ¶ 4. <u>Based on these allegations, the plaintiffs' claims against the defendants are logically related.</u> [Underlying added.]

**1.  <u>Here, Plaintiff Properly Pled a Series of Transactions</u>**

Pursuant to Fed. R. Civ. P. 8, "under the notice pleading standard, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007).  Additionally, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the Complaint." <u>Id.</u> at 94.  Plaintiff's Complaint easily satisfies Rule 8's requirement to give Defendants notice that Plaintiff is asserting that Defendants acted together in the same transaction or through a series of transactions:

> 29.    The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyright Movie/Work, to the peers seeking to download the computer file.

> 30.    Once a peer receives a piece of the computer file, here a piece of the copyrighted Movie/Work, it starts transmitting that piece to the other peers.

31.     In this way, all of the peers and seeders are working together in what is a called a "swarm."

33.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Movie/Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Movie/Work to each of the peers.  The recipient peers then automatically begin delivering the pieces they just received to the other peers in the same swarm.
* * *
38.     [Plaintiff's investigator] IPP extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transaction and the IP addresses associated therewith for the file identified by the SHA-1 hash value of [it is set forth in the applicable Complaint] (the "Unique Hash Number").

39.     The IP addresses, Unique Hash Number and hit dates contained within Exhibit A accurately reflect what is contained in the evidence logs, and show:

(A)     Each Defendant had copied a piece or pieces of Plaintiff's copyrighted Movie/Work identified by the Unique Hash Number and was simultaneously distributing that piece or pieces to the other Defendants who, in turn, were copying and distributing that piece and other pieces thereof for distribution to the other Defendants; and

(B)     Therefore, each Defendant acted in concert with the Defendants and was part of the same series of transactions which, taken together, resulted in the copying and distribution of complete copies of Plaintiff's work.

While the logical relationship test does not require it, should this matter go trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different <u>but</u> <u>for</u> each of the Defendants' infringements.

## 2.     <u>There Are Common Issues of Fact and Law</u>

"Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact."  <u>Call of the Wild</u> at 343.  "The plaintiffs meet this requirement."  <u>Id.</u>  "In each case, the plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue

and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders." Id. The "factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant." Id.

### 3. Joinder Promotes Judicial Efficiency and is Beneficial to Putative Defendant

"[T]he Court must assess whether joinder would prejudice the parties or result in needless delay." Call of the Wild at 343. "To the contrary, joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants." Id.

### 4. Doe Defendants Cannot Demonstrate Prejudice At This Stage of the Litigation

"[T]he putative defendants are currently identified only by their IP addresses and are not named parties. Consequently, they are not required to respond to the plaintiffs' allegations or assert a defense. The defendants may be able to demonstrate prejudice [after being named], but they cannot. . . before that time." Id.

### 5. Disallowing Joinder Would Effectively Prevent Plaintiff From Being Able to Enforce Its Copyrights and Would Be Inconsistent With Rule 1

The Call of the Wild Court held that disallowing joinder would effectively prevent Plaintiff from being able to enforce its copyrights:

> The plaintiffs would be forced to file 5,583 separate lawsuits * * * Plaintiffs would additionally be forced to pay the Court separate filing fees in each of these cases, * * * This would certainly not be in the "interests of convenience and judicial economy," or "secure a just, speedy, and inexpensive determination of the action."
> Given the administrative burden of simply obtaining sufficient identifying information to properly name and serve alleged infringers, it is highly unlikely that the plaintiffs could protect their copyrights in a cost-effective manner.

Id. at 344-345.

**C.** **All of the Other District Courts From the Around the Country Permit Joinder**

     **1.** **California District Courts Permit Joinder**

All three Districts in California which have adjudicated joinder in BitTorrent copyright infringement cases hold that joinder is proper. The Eastern and Southern District have unanimously held joinder is proper. The Northern District has by the far the most cases. The two most recent decisions in the Northern District were decided by its Chief Magistrate Judge. Through these decisions, he came to a different conclusion than in previous cases and held that joinder is proper.

     **i.** **The Eastern District of California Allows Joinder**

In Camelot Distribution Group v. Does 1-1210, 2011 WL 4455249, *3 (E.D.Cal. 2011), which is the most recent decision in the state of California, the Eastern District of California analyzed the Northern District of California's decisions, did not even cite the D.C. opinions holding that joinder is proper, and held that joinder is proper even though "[t]he undersigned notes that several district judges and magistrate judges, predominantly in the Northern District of California, have repeatedly expressed procedural concerns in cases such as this one regarding, among other things, the propriety of venue in that district." Citing, On The Cheap, LLC v. Does 1–5011, 2011 WL 4018258, at *1 (N.D.Cal. 2011)  and seven (7) other Northern District of California cases. Despite the Northern District of California decisions, the Camelot Court "conclude[d] that a decision regarding joinder would be more appropriately made after further development of the record." See also, Berlin Media Art E.K. v. Does 1-144, 2011 WL 4056167 (E.D. CA. 2011) (permitting discovery in joined case.)

**ii.      The Southern District of California Permits Joinder in BitTorrent  Cases**

In Liberty Media Holdings, LLC v. Does 1-62, 2011 WL 1869923(S.D.Cal.2011)  the Court

held "[a]fter careful consideration of the issue, . . . [i]n this case, the complaint sufficiently *alleges*

that defendants are properly joined due to the use of BitTorrent, which necessarily requires each

user to be an uploader as well as a downloader," citing Call of the Wild at *2.  Liberty Media also

distinguished cases in which joinder was not proper and is the only S.D. of California decision

that can be found through a Westlaw search using the terms "BitTorrent and joinder."

**iii.      The Northern District of California Permits BitTorrent Cases and Expressly
Distinguishes Its Prior Precedent Holding Joinder Was Not Permitted**

The two most recent decisions in the Northern District of California have held that joinder

is proper and distinguished the District's prior decisions that that did not so hold.  In Patrick

Collins v. Does 1-2590, 2011 WL 4407172 (N.D. Cal. 2011), the Court noted "[r]ecently, courts

in this District . . . have come to varying decisions about the proprietary of joining multiple

defendants in BitTorrent infringement cases.  See MCGIP, LLC v. Does 1–149, 2011 WL

3607666, at 3 (N.D.Cal. 2011) (listing a sample of recent decisions)."  The Court then stated that

it had carefully reviewed the Northern District's decisions and held that if BitTorrent was

explained well in the Complaint then joinder is proper:

> This Court has carefully reviewed such decisions and notes that they are highly
> dependent on the information the plaintiff presented regarding the nature of the
> BitTorrent file-sharing protocol and the specificity of the allegations regarding the
> Doe defendants' alleged infringement of the protected work. Both of these factors
> guide the Court's joinder analysis in this matter as well. Reviewing Plaintiff's
> Application and supporting materials, Plaintiff has provided a fairly detailed
> explanation about how the BitTorrent protocol operates.

The Patrick Collins Court then cited the allegations in the complaint explaining how

BitTorrent works.  Significantly, the detail of the allegations in the current Complaint far exceed

the level of detail set forth in the above referenced Patrick Collins' complaint.  Additionally, the

Court acknowledged the economic realities of BitTorrent litigation "Plaintiff would additionally

be forced to pay the Court separate filing fees . . . This would certainly not be in the 'interests of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive determination of the action.'" Id. citing, Call of the Wild, 770 F.Supp.2d at 334.  See also, New Sensations, Inc. v. Does 1-1,474, 2011 WL 4407222, (N.D.Cal. 2011) (issued the same day as the Patrick Collins decision and containing identical language holding joinder is proper.)  Accord Hard Drive Productions, Inc. v. Does 1–46, 2011 U.S. Dist. LEXIS 67314 (N.D. Cal. 2011) (citing the Voltage opinion from D.C. and holding that joinder is proper); New Sensations, Inc. v. Does 1745, 2011 WL 2837610 (N.D. Cal. 2011) ("Judge Howell of the D.C. Circuit has repeatedly held that in infringement actions" joinder is proper "[h]is analysis makes sense." Citing, Call of the Wild Movie, LLC v. Smith, No. 10–0455, 2011 WL 1807416, at *9 (D.D.C. May 12, 2011) and Voltage Pictures, LLC v. Does 1–5,000, No. 10–0873, WL 1807438, at *8 (D.D.C. May 12, 2011)).

Just as the Patrick Collins' Court stated, the Northern District of California's earlier decisions are distinguishable.  See e.g., MCGIP, LLC v. Does 1-149, 2011 WL 4352110, N.D.Cal., September 16, 2011(a 3 page opinion, the complaint pled all of the Does resided in the State of California and the Court cited a case holding venue had to be proper); On The Cheap, LLC v. Does 1-5011, 2011 WL 4018258 (D.N.C. 2011) (in a 3 page opinion, the court severely criticized Plaintiff for suing 5011 people in one case by using long arm jurisdiction but the Court expressly left the door open for a proper suit by opining "were plaintiff truly desirous of enforcing its copyright in fair fashion, it has options available.  For example, had it filed a lawsuit in each of the four districts in California, at a cost of three additional filing fees, it would have eliminated many of the venue and jurisdictional problems discussed above and could have properly asserted to many Doe defendants that they were being sued in a district in which jurisdiction and venue would lie.")

Indeed, a close inspection of the decisions, holdings and complaints in each of the Northern District of California's early decisions concerning BitTorrent and joinder reveals that some of its judges are concerned with long-arm, venue and whether BitTorrent was explained well in the Complaint.  MCGIP, LLC v. Does 1-149, 2011 WL 4352110, (N.D.Cal. 2011) (a review of the cases cited and the underlying complaint make clear that the Court was concerned that venue was not proper); OpenMind Solutions, Inc. v. Does 1-39, 2011 WL 3740714, (N.D.Cal. 2011) (a 4 page opinion, that expressly would have allowed joinder except "Plaintiff has not demonstrated that Defendants were part of a single *Throated 30* swarm sharing in the exact same seed file.")

See also Boy Racer, Inc. v. Does 1-60, 2011 WL 3652521, (N.D.Cal. 2011) wherein a review of the complaint makes clear venue was improper.   Accordingly, the Court in Boy Racer cited Lightspeed v. Does 1–1,000, 2011 U.S. Dist LEXIS 35392 (N.D.Ill. 2011) (not available on Westlaw), which in a 2 page opinion also cited venue as the primary problem.   The only BitTorrent case Lightspeed relied on was LaFace Records, LLC v. Does 1-38, 2008 WL 544992 (E.D. N.C. 2008) which found "Plaintiffs are the alleged owners of the copyrights in numerous sound recordings made by artists who no longer control the copyrights at issue."   The finding of numerous copyrights and a review of the underlying complaint in LaFace makes clear there was not an allegation the Defendants were connected through one unique cryptographic hash value. Additionally, the Boy Racer Court held the Plaintiff failed to explain how BitTorrent is different from previous peer-to-peer networks.   Indeed, a review of the complaint in Boy Racer reveals that it does not mention of crytographic hash values.

Additionally, the Boy Racer opinion relied on two previous Boy Racer opinions issued by Chief Magistrate Judge Grewell; Judge Grewell has subsequently twice held that joinder is proper. The Boy Racer decision also applied the incorrect legal standard under 9th Circuit precedent. Specifically, Boy Racer would require copyright owners to prove there was an actual transfer of

data from one computer to another – that is an entirely invented test and is simply wrong.  Cf Patrick Collins v. Does 1-2590, 2011 WL 4407172, *4 (N.D. Cal. 2011) ("The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of transactions or occurrences' to require a degree of factual commonality underlying the claims," citing Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir.1997)).[19]

As stated in Patrick Collins v. Does 1-2590, 2011 WL 4407172, *4 (N.D. Cal. 2011), all of the other Northern District of California decisions are distinguishable.[20]  Moreover, none the Northern District of California cases ever addressed the issue of contributory infringement because none of the complaints pled it.  Contributory infringement invokes joint and several liability which is a completely alternative basis for finding joinder is proper.

**2.      The Northern District of Illinois Permits Joinder**

There are only two decisions which come up using Westlaw and the terms "BitTorrent & joinder" in Illinois; they are First Time Videos, LLC v. Does 1-76  --- F.R.D. ----, 2011 WL 3586245 (N.D.Ill.,2011) and First Time Videos, LLC v. Does 1-500, --- F.Supp.2d ----, 2011 WL 3498227 (N.D.Ill.,2011) and were decided by two different judges.   Both Illinois decisions held joinder is proper.

In First Time Videos, LLC v. Does 1-76   --- F.R.D. ----, 2011 WL 3586245, *4 (N.D.Ill.,2011), the Court went onto distinguish the Northern District of Illinois' earlier decisions (which cannot be found on Westlaw) by holding that personal jurisdiction was not proper in those cases:

It is true that some courts in this District have reached different conclusions on the issue of joinder. For example, in some cases, courts have severed all but the first of

---

[19] The Boy Racer opinion is also expressly inconsistent with Rule 1 insofar as it seeks to intentionally cause copyright owners to pay filing fees.  See FN1.  This rationale evinces a total lack of understanding of the practical realities of BitTorrent litigation and is inconsistent with the purposes Rule 1 and 20.

[20] There are numerous other Northern District of California decisions but every single one of them is distinguishable on the basis that BitTorrent was not well explained by describing cryptographic hash values or on the basis that the long-arm statute or venue was improper.

the Doe defendants from the action and subsequently dismissed the suit against the first Doe defendant for lack of personal jurisdiction. See, e.g., Future Blue, Inc. v. Does 1–300, 10 C 6256 (N.D. Ill. June 8, 2011) (Conlon, J.); Lightspeed v. Does 1–1000, 10 C 5604 (N.D.Ill. Mar. 31, 2011) (Manning, J.); Millenium [sic] TGA Inc. v. Does 1–800, 10 C 5603 (N.D.Ill. Mar. 31, 2011) (Manning, J .)

### 3.   **The Southern District of New York Holds Joinder is Permitted**

DigitProtect USA Corp. v. Does, 2011 WL 4444666 (S.D.N.Y. 2011) is the only decision currently on Westlaw in the state of New York addressing BitTorrent and Joinder.  It held joinder was improper but granted DigiProtect leave to amend and stated "[a]ny repleading by Digit Protect must be based on specific factual allegations connecting these defendant to the same specific swarming transaction, or series of transactions, to support their joinder.  Otherwise, the only 'commonality' is that 'each commit[ted] the exact same violation of the law in exactly the same way.'  The current allegations are inadequate to support joinder."  Id. at FN3.  Although not on Westlaw, in a complaint with very nearly verbatim identical allegations as the one before the Court, the Southern District of New York held joinder was proper.  Patrick Collins v. John Does 1-9, 11-cv-01269 (S.D.N.Y. 2011) (Dkt. 10) stating: Order denying Motion to Quash and to Sever.  Upon careful consideration, for the reasons stated in plaintiff's opposition, the motion is denied."

### 4.   **Joinder is Also Proper Because Plaintiff Pled That Each of the Defendants Is Contributorily Liable For Each Other Defendant's Infringement**

Joinder is also proper because Plaintiff pled that each Defendant is contributorily liable for each of the other Defendant's infringement.  "It is, today, a given that 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory infringer.'"  Costar Group, Inc. v. Loopnet, Inc., 164 F. Supp.2d 688, 696 (M.D. 2001).  Here, Plaintiff properly pled contributory infringement:

54.   By participating in the BitTorrent swarm with the other Defendants, each Defendant induced, caused or materially contributed to the infringing conduct of each other Defendant.

55.     Plaintiff did not authorize, permit or consent to the Defendants' inducing, causing or materially contributing to the infringing conduct of each other Defendant.

56.     Each Defendant knew or should have known that other BitTorrent users, here the other Defendants, would become members of a swarm with Defendant.

57.     Each Defendant knew or should have known that other BitTorrent users in a swarm with it, here the other Defendants, were directly infringing Plaintiff's copyright[ed] Work by copying those of the constituent elements of the registered Work that are original.

58.     Indeed, each Defendant directly participated in and therefore materially contributed to each other Defendant's infringing activities.

59.     Each of the Defendants' contributory infringements were committed 'willfully' within the meaning of 17 U.S.C. § 504(c)(2).

Significantly, Plaintiff will prove that there was one initial seeder that uploaded the subject torrent file identified by the unique hash value.  Plaintiff will further prove that when a Defendant receives a piece from a downstream infringer, i.e., an infringer who already had that piece, then that Defendant will automatically begin distributing the piece it received from the downstream infringer to others.  By doing so, Plaintiff will prove that said Defendant materially assists the downstream infringer's direct infringement of Plaintiff's exclusive right to "redistribute . . . the Work. . . ."  in violation of 17 U.S.C. § 106(3) and 17 U.S.C. §501.  Similarly, when a Defendant provides a piece of Plaintiff's copyrighted work to an upstream infringer, Plaintiff will prove that the upstream infringer both sends that piece to other infringers and will also assemble the entire Work.   Accordingly,  by  delivering  a  piece  to  an  upstream  infringer,  the  Defendant  is contributorily liable for materially assisting the upstream infringer to redistribute, perform and display the Work in violation of 17 U.S.C. § 106(3)-(5) and 17 U.S.C. § 501.

### a.      Contributory Infringement is a Jury Question

Since one of the grounds for permissive joinder is joint and several liability, should the Court hold that joinder is not permitted, then any such holding would effectively summarily adjudicate Plaintiff's claim for contributory infringement.  Such a holding would be erroneous because contributory infringement is "a question of fact for trial."  Adobe Systems, Inc. v. Canus

Productions, Inc., 173 F. Supp.2d 1044, 1055 (C.D. Cal. 2001); Marobie-FL, Inc. v. National
Ass'n of Fire Equipment Distributors, 983 F. Supp. 1167 (N.D. IL 1997) ("fact questions
precluded summary judgment with respect to providers' liability for contributory infringement").
Moreover, since BitTorrent works through the cooperative exchange among peers in a swarm,
claims for contributory infringement must be permitted or the law would be inconsistent with the
very nature of BitTorrent.

> **b.      Plaintiff Intends to Call Each Defendant To Prove Contributory
> Infringement vis-à-vis the other Defendants**

Regarding contributory infringement, by way of example, Plaintiff has to prove Doe 1 is
liable for direct infringement in order for Plaintiff to succeed on its claim that Doe 2 is
contributorily liable for Doe 1's infringement.  Indeed, "without proof of direct infringement there
can be no liability for contributory infringement."  Bridgeport Music, inc. v. Diamond Time, Ltd.,
371 F.3d 883 (6th Cir. 2004); accord Goldberg v. Cameron, 2009 WL 2051370, 6 (N.D. Cal. 2009)
(same.) Accordingly, to support its claim of contributory infringement against each Defendant vis-
a-vis each other Defendant, Plaintiff intends to call each of the Defendants to prove the direct
infringement.  The realities associated with Plaintiff's evidentiary burdens weighs in favor of
having one trial, as opposed to multiple trials, so that the parties' resources are not squandered.

> **D.      Distinguishable Non-BitTorrent Cases**

Various cases have been cited in an effort to avoid joinder in BitTorrent cases. Some of the
cases, for example, unlike this case, involve multiple Plaintiffs and infringement of multiple
copyrights in the same lawsuit.  Moreover, the technology underlying these cases is Gnutella.
Gnutella was all 1-1 peer interactions and is entirely different than BitTorrent for that reason.  See
(1) BMG Music, et.. al. v. Does 1-4, Case No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS
53237, (N.D. Cal. 2006), (5 Plaintiffs – 12 different songs, see the Complaint at ¶ 15 and Exhibit
A to the Complaint); (2) Twentieth Century Fox Film Corp. et. al. v. Does 1-12, Case No. 3:04-

cv-04862-WHA, (N.D. Cal. 2004), (6 Plaintiffs – 13 songs, see the Complaint at ¶¶ 4-11 and Exhibit A to the Complaint); (3) Interscope Records, et. al. v. Does 1-25, 2004 U.S. Dist. LEXIS, Case No. 6:04-cv-197 – ACC- DAB (M.D. Fla. 2004), (16 Plaintiffs and dozens if not hundreds of songs, see the Complaint at ¶¶ 4-19 and Exhibit A to the Complaint); and (4) BMG Music v. Does 1-203, Case No. 2:04-cv-00650-CN (E.D.P.A. 2004) (17 Plaintiffs and numerous works, see the Complaint at ¶¶ 4-19 & 23.)    Since multiple works were at issue in these copyright cases, the Plaintiffs in those cases did not plead that the online infringements were part of the same transaction or series of transactions or that the defendants in those cases were contributorily liable for each others' infringement.

In some of the cases brought by DirecTV, Inc. joinder was not permitted. The Complaints in all of its cases are nearly identical.  In these cases, DirecTV alleged that the defendants purchased – but not from each other or through a series of transactions among each other – "Pirate Access Devices" to steal satellite TV signals.[21]  In each of the DirecTV cases, DirecTV only pled one or more of the following claims: (1) unauthorized reception of satellite signals in violation of 47 U.S.C. § 605(a); (2) unauthorized interception of electronic communications in violation of 18 U.S.C. §2511 (1)(a); (3) possession of pirate access devices in violation of 18 U.S.C. § 2512(1)(b); (4) damages for willful assembly or modification of devices or equipment in violation of 47 U.S.C. § 605(e)(4); and (5) conversion.[22]  Accordingly, it is clear that these cases did not involve claims that arose from the same transaction or occurrence or series of transactions and joint and several liability between the Defendants was not alleged.  Accordingly, these cases are materially distinguishable.

---

[21] See e.g.: In the Matter of DirecTV, Inc., DirecTV, Inc. v. Adrian, DirecTV, Inc. v. Boggess, and DirecTV v. Lewis.
[22] The Complaint in DirecTV v. Lewis, et. al., 2004 WL 941805 (W.D. N.Y. 2004) is not available, however the order severing the defendants makes clear it involved the same causes of action, as the other DirecTV cases.

**E.      Plaintiff Properly Pled a Claim for Copyright Infringement: Defendant's Motion to Dismiss Should Be Denied**

Defendant's claim that copyright registration is a prerequisite for copyright infringement is incorrect.   The Plaintiff's copyright application has been filed with the United States Copyright Office, as set forth in the complaint.   Once a certificate is issued, the registration will date back to the date of application. 17 U.S.C. § 410(d).

 The Supreme Court, in Reed Elsevier, Inc. v. Muchnick, 130 S.Ct. 1237 (U.S. 2010), held that § 411(a) does not restrict a federal court's subject-matter jurisdiction in copyright infringement suits.   "Federal district courts have subject-matter jurisdiction over copyright infringement actions based on 28 U.S.C. §§ 1331 and 1338.   But neither § 1331, which confers subject-matter jurisdiction over questions of federal law, nor § 1338(a), which is specific to copyright claims, conditions its jurisdictional grant on whether copyright holders have registered their works before suing for infringement."   Id. at 1246.

Further, the majority of federal courts hold only an application is necessary to commence a copyright infringement suit.   In a twelve page opinion where this is the primary issue, the Ninth Circuit explained its rationale by stating, "the application approach avoids delay without impairing the central goal of copyright registration."   Cosmetic Ideas, Inc. v. IAC/Interactive Corp, 606 F.3d 612, 620 (9th Cir. 2010).

Recently, a court within the fourth circuit held that a court has subject matter jurisdiction over registered and unregistered works:

> Although the United States Court of Appeals for the Fourth Circuit historically interpreted this statute to mean that "[c]opyright registration is a jurisdictional prerequisite to bringing an action for infringement under the Copyright Act," the United States Supreme Court has recently decided to the contrary. Consequently, this Court properly has subject-matter jurisdiction over plaintiff's copyright infringement claims for both its registered and unregistered images. [Underlining added.]

<u>Tattoo Art, Inc. v. TAT International, LLC</u>, 2011 WL 2585376 at 11 (E.D.Va. 2011) (internal citations omitted).  Just as in <u>Tattoo</u>, the court should find it has subject matter jurisdiction and deny defendant's motion to dismiss.

In arguendo, should the court find that registration is a precedent for filing suit, it should not dismiss the complaint but instead give plaintiff five days to amend its complaint under section 43(a) of the Lanham Act.  Indeed, here the subject torrent file contained an exact duplication of the common law trademark CHERRYBOXX.

## V.   <u>CONCLUSION</u>

Since joinder is proper in this matter, and this case is properly brought, Plaintiff respectfully requests that the Court deny all motions to sever filed prior to Plaintiff learning the identities of the Doe Defendants without prejudice to the Defendants' right to raise the issue again later in the litigation.

Dated: October 20, 2011

Respectfully Submitted,

By   <u>*/s/ Jon A. Hoppe*</u>
Jon A. Hoppe, Esquire #6479
Maddox, Hoppe, Hoofnagle &
Hafey, L.L.C.
1401 Mercantile Lane #105
Largo, Maryland 20774
(301) 341-2580

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2011 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:  /s/ *Jon A. Hoppe*

## SERVICE LIST

1.  Eric J. Menhart, Esq.
    CyberLaw P.C.
    1200 G St. NW, Suite 800
    Washington, D.C. 20005
    Phone: 202-904-2818
    Fax: 202-403-3436

2.  Bradley F. Fowler, Esq.
    Franklin & Prokopik, P.C.
    Two North Charles St., Suite 600
    Baltimore, MD 21201
    Phone: 410-230-3050
    Fax: 410-752-6868
    Email: bfowlerlegal@fandpnet.com